**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Jason Adkinson,

        Plaintiff,

v.

Phoenix Union High School District, et al.,

        Defendants.

No. CV-23-01093-PHX-DJH

**ORDER**

Pending before the Court is a Motion for Summary Judgment filed by Phoenix Union High School District and individually named board members'[1] (collectively, the "Defendants").  (Doc. 30).  Plaintiff Jason Adkinson ("Plaintiff") filed a Response (Doc. 31), and Defendants filed a Reply.  (Doc. 32).  For the reasons set out below, the Court grants summary judgment in Defendant's favor.[2]

## I.     Background[3]

Plaintiff, a Black male, has been working for Defendants since April of 2013.  (Doc. 7 at ¶10; Doc. 8 at ¶10).  His official job title is Journeymen Electrician, and he works within the Construction and Facilities Department of the Logistics Division.

---

[1] The individually named board members are: Lela Alston, Jennifer Hernandez, Aaron Marquez, Ceyshe Napa, Signa Oliver, Stephanie Parra, and Naketa Ross.  (Doc. 7).

[2] In his Response, Plaintiff objects to the fact that Defendants' Motion for Summary Judgment was signed by an attorney that had yet to make an appearance in this case.  (Doc. 31 at 1).  Mr. Lewis has since entered his appearance, and the Court otherwise finds no reason to believe Defendants did not comply with Local Rule of Civil Procedure 83.3.  *See* LRCiv 83.3 (listing out the duties of an attorney of record).

[3] Unless otherwise noted, the following facts are undisputed.

(Doc. 30 at 4).  Put simply, he is an electrician.  (*Id.*)  Defendants are one of the largest high school districts in the country and its board members.  (*Id.*)  Initially, Plaintiff's supervisor was Curt Schultz, until it became Arthur Segoviano.  (*Id.* at 4).  During the course of Plaintiff's employment, he made numerous internal complaints about his supervisor, Curt Schultz.  (Doc. 7 at ¶14; Doc. 8 at ¶13).  Seeking a promotion, Plaintiff applied to be a Project Specialist.  (Doc. 7 at ¶16; Doc. 8 at ¶15).  Because the school district did not receive enough applicants, the position was not filled when Plaintiff applied.  (Doc. 7 at ¶16; Doc. 8 at ¶15).  Later, when the position was reopened, Plaintiff failed to apply.  (Doc. 7 at ¶16; Doc. 8 at ¶15).  Still looking for other opportunities, Plaintiff eventually applied for the Chief Electrician position.  (Doc. 7 at ¶17; Doc. 8 at ¶16).  The position eventually went to Arthur Segoviano.  (Doc. 7 at ¶17; Doc. 8 at ¶16).  Now, Plaintiff argues he was not hired for the position because of his race and his internal complaints about his supervisor.  (Doc. 31 at 2).  Plaintiff brings a race discrimination claim under a failure to promote theory, and a retaliation claim against Defendants under Title VII of the Civil Rights Act.  42 U.S.C. § 2000e-2(a); (Doc. 7 at 5–7).  He also brings the same claims under the Arizona Civil Rights Act ("ACRA").

## II.    Legal Standard

To grant summary judgment, the court must determine that in the record before it there exists "no genuine issue as to any material fact," and "that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In determining whether to grant summary judgment, the court will view the facts and inferences from these facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law.  *Id.* at 248.  A factual dispute is genuine

1    if the evidence is such that a reasonable jury could resolve the dispute in favor of the

2    nonmoving party.  *Id.*  A party opposing a motion for summary judgment cannot rest upon

3    mere allegations or denials in the pleadings or papers, but instead must set forth specific

4    facts demonstrating a genuine issue for trial.  *See id.* at 250.  Finally, if the nonmoving

5    party's evidence is merely colorable or is not significantly probative, a court may grant

6    summary judgment.  *See, e.g.*, *California Architectural Build. Prods., Inc. v. Franciscan*

7    *Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006 (1988).

8        The Ninth Circuit has cautioned that, "[i]n reviewing motions for summary

9    judgment in the employment discrimination context, a court must 'zealously guard[ ] an

10   employee's right to a full trial, since discrimination claims are frequently difficult to prove

11   without a full airing of the evidence and an opportunity to evaluate the credibility of the

12   witnesses.'"  *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019)

13   (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004)) (alterations

14   in original); *see also Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1564 (9th Cir. 1994) ("'We

15   require very little evidence to survive summary judgment' in a discrimination case,

16   'because the ultimate question is one that can only be resolved through a 'searching

17   inquiry'—one that is most appropriately conducted by the factfinder.'") (quoting *Sischo-*

18   *Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).  The Court

19   will proceed with these principles in mind.

20   **III.   Discussion**

21       Plaintiff asserts claims under Title VII and ACRA for race discrimination (failure

22   to promote) and retaliatory discharge.[4] As the Court will fully explain below, Plaintiff has

23   not set forth a prima facie case for failure to promote that can survive summary judgment.

24   The same is true for Plaintiff's prima facie case for retaliation.  Further, his state law claims

25   under ACRA are time barred and will be dismissed.

26   ───────────────

[4] Defendants state that individual board members cannot be found liable under either Title
VII or the Arizona Civil Rights Act because they are not employers under either statute.
To the extent this is true, Defendants should have filed a motion to dismiss the parties from
the lawsuit. Seeing no such motion on the docket, the Court will not rule on this matter at
this time.

### A.  Failure to Promote under Title VII

"To establish disparate treatment under Title VII, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent."  *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  Under either approach, Plaintiff must produce some evidence suggesting that Defendants' decision to not offer Plaintiff a promotion was "due in part or whole to discriminatory intent[.]" *Weil*, 922 F.3d at 1002 n.7 (quoting *McGinest*, 360 F.3d at 1123); *see also Freyd*, 990 F.3d at 1228.

The *McDonnell Douglas* burden-shifting framework requires three steps.  411 U.S. at 802–04.  First, Plaintiff must meet the initial burden to establish a prima facie case of discrimination.  *Id.* at 802.  At the second step, "[t]he burden of production, but not persuasion" shifts to Defendants "to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000).  If Defendants do so, then the presumption of discrimination "drops out of the picture."  *McGinest*, 360 F.3d at 1123 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).  The burden then shifts back to Plaintiff to show Defendants' articulated reason is pretextual.  *Freyd*, 990 F.3d at 1228.  Ultimately, the plaintiff's burden at this step is to "produce some evidence suggesting that [the defendants'] failure to promote [him] was due in part or whole to discriminatory intent." *McGinest*, 360 F.3d at 1123.

### 1.    Prima Facie Case

To establish a prima facie case for discrimination under *McDonnell Douglas*, Plaintiff must show: (1) he belongs to a class of persons protected by Title VII; (2) he applied for and was qualified for the position and was denied; (3) he was rejected despite his qualifications; and (4) the employer filled the position with an employee not of plaintiff's class.  *McDonnell Douglas*, 411 U.S. at 802.  "The requisite degree of proof necessary to establish a prima facie case for Title VII. . . claims on summary judgment is

minimal and does not need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

It is undisputed that Plaintiff is an African American man, and thus a member of a protected class. (Doc. 7 at ¶11; Doc. 8 at ¶10). He was also qualified for the position, with 16 years of experience. (Doc. 30 at 5). It is also undisputed that Plaintiff was not selected for a promotion for the Chief Electrician position in March of 2021. (Doc. 7 at ¶17; Doc. 8 at ¶16). The person selected, Arthur Segoviano, a Hispanic male, is not a member of Plaintiff's class but similarly situated. (Doc. 31 at 2). Thus far, Plaintiff has established a prima facie case for discrimination. *See McDonnell Douglas*, 411 U.S. at 802 (establishing the elements of a plaintiff's prima facie case).

## 2.    Legitimate Non-Discriminatory Reason

Defendants must now provide a legitimate, nondiscriminatory reason for Plaintiff's failure to promote claim. *McDonnell Douglas Corp.*, 411 U.S. at 802.

Defendants assert that they did not hire Plaintiff because he was the lowest scoring candidate for the position. (Doc. 30 at 11). They explain that the interview process was a two-day process: on the first day, a five-member panel[5] interviewed the applicants with the same predetermined questions, then consulted and scored the applicants; and on the second day a third party administered a written test and a technical assessment. (Doc. 30 at 1; Depo. of Jared Lance Reynolds, 31:13–16; 33:2–8 at Doc. 30-1 at 137 ("Reynolds Depo")). Defendants say the panel asked the applicants questions relating to the technical nature of the job as well as personnel management. (*Id.*) Defendants offer up the scorecards from each of the three candidates that applied for the position. These scorecards show that Plaintiff scored lower on every portion of the interview process in relation to the ultimately chosen Arthur Segoviano, and that he also scored lower than the other applicant

---

[5] The record does not clarify the composition of the panel that interviewed Plaintiff. Mr. Reynolds, who has a leadership role in the District, was one of the panelists. He explained that the "committee is comprised of district employees that have different backgrounds. So we will have the trade, we have a CEA representative there as far as our association, and we also have either site leadership, if at all possible, whether that be the assistant principal or principal, or we also have site staff, campus facility supervisors or on the smaller schools, they are called building maintenance worker leads."

who was also not chosen.  (Doc. 30 at 5–6).  Defendant says all five members of the interviewing panel believed that Plaintiff achieved the lowest scores on every portion of their eligibility criteria.  (*Id.*)  Defendants maintain that they simply took the highest scoring applicant—highest scoring in every portion of the interview process—and hired that person regardless of race.  (Doc. 30 at 11–12).

Defendants attached the interview results for the oral portion to their Motion for Summary Judgment as follows:

|  | Start Year | Panelist 1 | Panelist 2 | Panelist 3 | Panelist 4 | Panelist 5 | Total | Average Score |
|---|---|---|---|---|---|---|---|---|
| Hubbard | 1998 | 27 | 28 | 29 | 26 | 24 | 134 | 26.8 |
| **Adkinson** | **2013** | **32** | **27** | **25** | **24** | **23** | **131** | **26.2** |
| Segoviano | 2016 | 33 | 33 | 29 | 27 | 25 | 147 | 29.4 |

(Doc. 30 at 5).

The results for the written and technical portions are as follows:

|  | Start Year | Written Skills | Performance Skills test | Average Score |
|---|---|---|---|---|
| Hubbard | 1998 | 80% | 86% | 83% |
| **Adkinson** | **2013** | **85%** | **42%** | **64%** |
| Segoviano | 2016 | 100% | 86% | 93% |

(Doc. 30 at 6).

According to Defendants, the scoring charts above show that Plaintiff scored the lowest out of the three candidates for the position and establish a legitimate non-discriminatory reason for not promoting Plaintiff.  (Doc. 30 at 6).

Poor performance during an interview process is considered a valid and legitimate, non-discriminatory reason for failure to hire or promote.  *See Dodson v. FedEx Corp. Servs., Inc.*, 679 Fed. Appx.  511 (9th Cir. 2017) (poor performance interviews sufficiently stated a legitimate, non-discriminatory reason for no promoting plaintiff); *Carr v. New Jersey*, 534 Fed. Appx. 149, 152 (3d Cir. 2013) (finding that plaintiff's weak performance during the interview was a legitimate nondiscriminatory reason why he should not have

progressed in the interview process); *see also McCann v. Astrue*, 293 Fed. Appx. 848, 852 (3d Cir. 2008) (stating that plaintiff alleges no racial bias on the part of the entire committee involved in the selection process); *see also Green v. Potter*, No. 08–597, 2010 WL 2557218, at *5 (D.N.J. June 23, 2010) (honoring the defendant's choice to choose the most qualified candidate). Therefore, Defendants have set forth a valid reason, which "if believed by a trier of fact would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)); *see also Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 (1978) (emphasizing that at this point in the analysis, the defendant does not need to prove *absence* of discriminatory motive, merely articulating a legitimate nondiscriminatory reason will suffice). Having met this burden of production by producing a nondiscriminatory explanation, Defendants have rebutted the prima facie presumption of having engaged in an unlawful employment action under Title VII.

### 3.    Pretext

At the last step of the framework, the burden shifts back to Plaintiff to prove Defendants' legitimate, neutral reason is actually pretextual for discrimination. *Freyd*, 990 F.3d at 1228. A plaintiff can prove pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000).

If the plaintiff presents direct evidence of discriminatory motive, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221. Direct evidence proves discriminatory animus without inference or presumption and "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th

Cir. 1998), *as amended* (Aug. 11, 1998)). If the plaintiff relies on circumstantial evidence at the pretext stage, the evidentiary threshold is no longer an inference of discrimination, but the evidence must be both specific and substantial to create a triable issue of fact. *Godwin*, 150 F.3d at 1222; *Wallis*, 26 F.3d at 890. The focus of the pretext question is whether the employer truly had discriminatory intent. *Green v. Maricopa Cnty. Cmty. Coll. Sch. Dist.*, 265 F.Supp.2d 1110, 1128 (D. Ariz. 2003) (quoting *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered")).

Plaintiff's briefing does not present evidence that proved animus without inference or consisted of clearly discriminatory statements. *See Coghlan*, 413 F.3d at 1095. Instead, Plaintiff claims Defendants' discriminatory racial animus is evidenced in his lack of unfavorable performance reviews, the nature of the interview process, and the treatment of his work assignments. (Doc. 31).

### 1.    No Unfavorable Performance Evaluations

Plaintiff first says Defendants' explanation is not believable because he had never had an unfavorable performance evaluation. (Doc. 31 at 11). He says Defendants have never argued that he was a "substandard employee, just that the other applicant was better," and that he is "asking that a trier of fact have an opportunity to look [] and see if it is true – was Art the better candidate?" (*Id*. at 10).

But Plaintiff's lack of unfavorable performance evaluations and subjective belief that he was the better candidate is not sufficient evidence that rebuts the legitimacy of the interview process and the conclusions drawn from it. Again, the focus of the pretext inquiry is not whether Defendants made the best decision, but whether that decision was honest. Accordingly, this assertion cannot defeat Defendants' legitimate, non-discriminatory reason for deciding not to promote him.

As Defendants point out, the cases Plaintiff cites to are not analogous because they both arise in the context of discriminatory terminations, not failures to promote. (Doc. 32 at 4). To begin with, *Van Arsdale* is a case about the whistleblower protection provisions

of the Sarbanes-Oxley Act, not a discrimination claim. *Van Arsdale v. International Game Tech.*, 577 F.3d 989, 991(9th Cir. 2009). The plaintiff in that case was not only terminated, but the Court also relied heavily on the proximity of his termination to his protected activity of engaging in whistleblowing. *Van Arsdale*, 577 F.3d at 1003. The close temporal proximity between the protected activity and the adverse employment action is not present in Plaintiff's claims in this instance. The other case cited by Plaintiff does not fit neatly, or at all with Plaintiff's case either. *Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953 (D. Ariz. 2020). In *Ader*, a retaliation claim case based on the Federal Labor Standards Act, there were lots of other facts that called into question the employer's reason for terminating the plaintiff. *Id.* at 976. For example, plaintiff's recent promotion, his pay raise, and again, the close temporal proximity between the protected activity and plaintiff's termination. *Id.* None of these factors are present in the current lawsuit. In termination cases, evidence of performance reviews are relevant to an employer's decision to terminate. *See Douglas v. Anderson*, 656 F.2d 528, 533 n.5 (9th Cir. 1981) ("In establishing a prima facie case, [plaintiff] need only produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue."). But a lack of prior negative performance reviews does not evidence that the interview process was tainted by discriminatory animus. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (stating that "liability depends on whether the protected trait . . . actually motivated the employer's decision). Here, the mere fact that Plaintiff has never received an unfavorable performance review is not "specific and substantial" circumstantial evidence that Defendants' proffered legitimate reason for not promoting him as pretexual. *Villiarimo v. Aloha Island Air, Inc.* 281 F.3d 1054, 1062–63 (9th Cir. 2002). In other words, it does not sufficiently negate Defendants' evidence that the decision to not promote him was based on other, non-discriminatory reasons, which may or may not have incorporated prior performance reviews. Without more, Plaintiff has not met his burden to show that Defendant's proffered reason is pretexual.

/ / /

1

2.      **Nature of Interview Process**

2      Plaintiff also attacks the credibility of the interview process and says that the

3    applicants' scores changed throughout the process.  (Doc. 31 at 9).  Plaintiff says "the

4    nature of the scoring," the fact that the "people who were involved in the discrimination

5    were participating" in the interview process, and the fact that they chose a Hispanic person

6    for the position raise triable issues of race discrimination.  He offers few specifics to

7    support these contentions, however.  Plaintiff points to Mr. Reynolds' deposition testimony

8    explaining the interview process.  Therein, Mr. Reynolds explains that following the initial

9    interviews, a five-member panel conferred to review the results and finalize the scores.

10   Though neither party clarifies this process, Defendants seems to admit that following the

11   interview portion of the process, Plaintiff received a cumulative score of 139, which was

12   reduced to 131 after the panel conferred.  Defendants state, however, that this cannot be an

13   indicia of animus because all three candidates' scores were changed after the panel

14   conferred and reached consensus.  Defendants persuasively point out that the score changes

15   were ultimately irrelevant because "there was no point in the interview process where

16   Plaintiff scored higher than the successful candidate."  (Doc. 32 at 3).

17      The Court finds that under these facts Plaintiff has not met his burden of production.

18   Plaintiff does not substantiate his doubts about the interview process or suspicion that those

19   involved in the process were racially discriminating against him with anything beyond his

20   own speculation.  As noted, the scorecards reflect that Plaintiff scored lower at all points

21   during the interview and that Segoviano's score was always higher than Plaintiff's – even

22   before the downward adjustment made following the panel's conferral.[6]  (*See generally*

23   Doc. 30 at 5 (showing the scoring on different portions of the interview process)).  In total,

24   Plaintiff's proffered evidence does not show the scores were either changed due to racial

25   animus, or that the changes were ultimately relevant to the decision not to promote

26   Plaintiff.  *See Texas Dep't of Cmty. Affs.*, 450 U.S. at 253 (explaining that the ultimate

27

28   [6] Defendant also points out that the scoring changes after the conferral also affected the
     third candidate.  (Doc. 32 at 2).  This means all candidates for the position had their scores
     changed after panel discussion.

1    burden remains with the plaintiff to show that Defendant's actions were discriminatory,

2    and defendant's burden should be viewed in light of the plaintiff's ultimate burden); *see*

3    *generally* 9 J. Wigmore, Evidence § 2489 (3d ed. 1940) (the burden of persuasion "never

4    shifts"). With the understanding that the burden of showing pretext merges with the

5    Plaintiff's ultimate burden of persuasion, the Court finds that Plaintiff has not satisfied his

6    burden.

### 3.    Treatment of Work Assignments and Ostracization at Work

8    Plaintiff also says he was ostracized at work and sent to do assignments alone that

9    required two persons.   Plaintiff's own deposition shows that he never asked for an

10    additional person to help him on tasks he found too gargantuan.  (Adkinson Depo, Doc. 30

11    at 164) (Plaintiff saying he did not want to ask for more help because he found that to be

12    humiliating).   The record also does not show that other employees were given different

13    tasks than he was.  (Depo. of Tommy Vasquez at Doc 30-1 at 3 ("Vasquez Depo")) (another

14    employee's testimony that work orders were randomly assigned amongst staff); Aff. of

15    Tommy Vasquez at Doc. 30-1 at 8 ("Vasquez Aff.") (stating that it was customary for

16    employees to report to their supervisor and ask for more help if needed)).  In fact, Plaintiff's

17    earlier supervisor stated that he gave Plaintiff tasks that were far simpler than what he gave

18    the other employees in an attempt to give him assignments that are "compatible with his

19    skillset." (Doc. 30 at 49, Exhibit A, Investigation conducted by a law firm to investigate

20    Plaintiff's internal complaint in 2018).

21    Further, the social ostracization at work Plaintiff complains about in the form of

22    people leaving when he comes into a room, runs idle to the analysis.  *See Burlington N. &*

23    *Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (reiterating that petty slights and minor

24    annoyances constitute "ordinary tribulations in the workplace" and are not actionable under

25    Title VII).  In 2018, Defendants hired an independent firm to investigate Plaintiff's internal

26    complaints, and the investigation found that there was a personal breakdown in Plaintiff's

27    and his supervisor's relationship that caused Plaintiff to act in an insubordinate manner.

28    (*Id.*) Examining these complaints in their entirety, Plaintiff complains about the amount

and type of work he is given, not about anything remotely akin to racial animus or discrimination. (*See generally* Vasquez Depo at 17:7–10; Adkinson Depo at 29: 20–22; Decl. of Manuel Silvas, Talent Director for Phoenix Union High School District, Doc. 30 at 43; (Doc. 30 at 151, Plaintiff's EEOC charge). None of the circumstantial evidence proffered by Plaintiff can allow a reasonable factfinder to conclude that the failure to promote Plaintiff was based on racial animus and not the fact that he scored lower than the successful applicant.

Accordingly, and even drawing all inference in favor of Plaintiff, as required to do at the summary judgment stage, Plaintiff has not met his burden of showing that Defendant's given non-discriminatory reason for failing to promote him was pretextual. *See Chuang*, 225 F.3d at 1126 (stating that while the plaintiff does not have to produce additional evidence, the plaintiff does need to raise a genuine issue of material fact at the summary judgment stage). The Court will enter summary judgment in Defendants' favor on this claim.

### B. Retaliation under Title VII

Title VII prohibits retaliation against an employee for opposing an unlawful employment practice or participating in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). To establish a prima facie case for retaliation under Title VII, Plaintiff must show: (1) he was engaged in a protected activity; (2) that he was subjected to adverse employment action by his employer; and (3) that there was a causal link between the protected activity and the adverse employment action. *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir.1984). This casual link is a "but for" causation standard. *Nilsson v. City of Mesa*, 503 F.3d 947, 953–54 (9th Cir. 2007). This means that "but for" the Plaintiff engaging in the protected activity, the adverse employment action would not have occurred. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (clarifying that employee must show "but for" causation). Once the plaintiff has established a prima facie case, the burden shifts to the employer to show a legitimate business reason for its actions. *Wrighten*, 726 F.2d at 1354; *Aguirre v. Chula Vista Sanitary Service*, 542 F.2d

779, 781 (9th Cir.1976).  If the employer accomplishes this task, the Plaintiff must offer evidence to show that the reason offered is a pretext for illegal retaliation.  *Wrighten*, 726 F.2d at 1354.

### 1.     Prime Facie case

First, the Plaintiff must establish that he was engaged in a protected activity. An employee engages in protected activity for purposes of Title VII when he opposes conduct that he reasonably believes to be an unlawful employment practice, or when he participates in an EEOC investigation or proceeding.  42 U.S.C. § 2000e-3(a); *see Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).   Therefore, there are two categories of protected activities under Title VII: activities in opposition to unlawful conduct and activities in participation of curbing unlawful conduct under Title VII.  *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011).

At no point before the filing of the Equal Employment Opportunity Commission ("EEOC") complaint on January 12, 2022, is Plaintiff alleging that he filed EEOC charges. (Doc. 6 at ¶ 9). Instead, he is alleging that he made internal complaints multiple times in 2020, 2021, and 2022.  (Doc. 31 at 13).  His complaints centered on his treatment by his supervisor for "bullying and discrimination," and sometimes about not being considered for promotional opportunities.  (*Id.*) The protected activity that Plaintiff engaged in is certainly not participatory.  It is, however, in opposition to what Plaintiff perceived to be unlawful conduct, namely the "bullying and discrimination." (Doc. 31 at 13).  This suffices as protected activity under Title VII.  *See Arkorful v. N.Y.C. Dept. of Educ.*, 712 F. Supp. 3d 336, 356, (E.D.N.Y. Jan. 24, 2024) (stating that protected activities can include making informal complaints to management, provided the complaints make clear the complained about activity is prohibited by Title VII). And a reasonable juror could conclude that Plaintiff was complaining about prohibited conduct under Title VII.

Next, Plaintiff must establish that he was subjected to a materially adverse employment action.  The Ninth Circuit takes an inclusive view on actions that can be considered adverse.  *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000).  Examples of

1   adverse actions include "demotions, disadvantageous transfers or assignments, refusals to

2   promote, unwarranted negative job evaluations and toleration of harassment by other

3   employees." *Id.* (citation omitted).   Likewise, the EEOC interprets an adverse action

4   broadly and defines it as "any action that might well deter a reasonable person from

5   engaging in protected activity." EEOC Compliance Manual Section 8, "Retaliation,"

6   ¶ 8002 (2025). Here, it is undisputed that Plaintiff was not promoted to the position of

7   Chief Electrician.  (Doc. 30 at 6); (Doc. 31 at 2).  The Court is satisfied that Plaintiff has

8   adequately established that he was subjected to a materially adverse employment action.

9            Lastly, Plaintiff must establish a casual link between the protected activity and the

10  adverse employment action.  In private sector and state and local government retaliation

11  cases, the causation standard requires plaintiff to show that "but for" a retaliatory motive,

12  the employer would not have taken the adverse action. *Univ. of Texas Sw. Med. Ctr. v.*

13  *Nassar*, 570 U.S. 338, 362 (2013) (distinguishing between the motivating cause standard

14  used for the federal government and the but for standard used for the private sector and

15  state and local governments).   Whether "analyzed as a requirement for protected activity

16  or under the element of causal link, . . . an employer must reasonably be aware that its

17  employee is engaging in protected activity." *Id.* (citing *Cohen v. Fred Meyer, Inc.*, 686

18  F.2d 793, 796 (9th Cir. 1982)); *see also Quinones v. Potter*, 661 F.Supp.2d 1105, 1126–27

19  (D. Ariz. 2009) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276,

20  291–92 (2d Cir. 1998) for the proposition that "implicit in the requirement that the

21  employer have been aware of the protected activity is the requirement that it understood or

22  could reasonably have understood, that the plaintiff's opposition was directed at conduct

23  prohibited by Title VII").  But "[a]n employee need not utter magic words to put his

24  employer on notice that he is complaining about unlawful discrimination.*" Ekweani v.*

25  *Ameriprise Fin., Inc.*, No. CV-08-01101-PHX-FJM, 2010 WL 481647, at *6 (D. Ariz. Feb.

26  8, 2010) (citation omitted).

27           There is no dispute that Defendants were on notice about Plaintiff's internal

28  complaints.  (*See generally* Doc. 31 at 6 (disputing the casual link between the protected

- 14 -

activity and the failure to promote and not notice of internal complaints)); *see also Cohen*, 686 F.2d at 796 ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.") Defendants nonetheless argue that the time between Plaintiff's complaints and their refusal to promote him is too great to support an inference of retaliatory causation.  (Doc. 32 at 6).

This emphasis on temporal proximity by Defendants is not entirely on point.  When a plaintiff offers only the cited protected activity as the basis of the adverse employment action to show causation, the two must be close enough in time to allow an inference of retaliatory motive.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that the timing between the protected activity and the adverse action must be "very close" if that is all the plaintiff relies on to establish causation between the two).   However, the Ninth Circuit has also refused to delineate a bright-line rule for when temporal proximity implies causation.  *Kama v. Mayorkas*, 107 F.4th 1054, 1061 (9th Cir. 2024).  As noted in *Kama*, whether temporal proximity, like any other type of circumstantial evidence, will allow for an inference of causation will depend on the circumstances. (*Id.*)

Here, it is undisputed that Plaintiff first filed an internal complaint in 2018.  (*See* Decl. of Manuel Silvas, Talent Director for Phoenix Union High School District at Doc. 30 at 43).[7]  He was not promoted in May of 2021.  (*Id.*)  This time gap does not support an inference of causation, particularly as Plaintiff has not established that any other verbal complaints he may have made during this time period was conveyed to anyone involved with the interview process.  *Compare Dawson v. Entek Int'l*, 630 F.3d 928,937 (9th Cir.

---

[7] The record is somewhat unclear as to when and to whom Plaintiff made all of his internal complaints.  In his Amended Complaint he alleges that he also made internal complaints in 2020, 2021, and 2022.  (Doc. 7 at ¶14).  In their Answer, Defendants admitted that he made complaints during his tenure but do not admit to those dates. (Doc. 8 at ¶13). Defendants' Motion for Summary Judgment then states that Plaintiff made his internal complaint in 2018, filed an EEOC charge in 2022, but that between 2018 and 2022, no complaints were filed by Plaintiff. (Doc. 30 at 4).  Plaintiff does not contradict this in his Response but does say that he had been making complaints "for years."  (Doc. 31 at 2).  In his deposition testimony, he clarified that he had made many of his complaints, not officially, but verbally to Tommy Vasquez, one of Plaintiff's supervisors. (Doc. 30 at 35, Exhibit 3, Deposition of Jason Adkinson). Plaintiff does not, however, state that his verbal complaints to Mr. Vasquez were relayed to Human Resources, the Phoenix District Board members, or anyone involved with the interview process.

2011) (two days close enough to establish temporal proximity); *Bell v. Clackamas Cnty.*, 341 F.3d 858, 866 (9th Cir. 2003) (four days sufficient); *Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 870–71 (9th Cir. 1996), *as amended on denial of reh'g* (Apr. 22, 1996), *as amended on denial of reh'g* (June 3, 1996) (one day sufficient); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986) (less than two months sufficient). The four-year gap between when Plaintiff filed his first complaint and Defendants failed to promote him does not create an inference of retaliation.

To summarize, the Court finds that although Plaintiff was engaged in protected activity and subjected to an adverse employment action, he has not met his burden of establishing but for causation. Therefore, Plaintiff has not made out a prima facie case for retaliation and has not tendered circumstantial evidence that would allow a reasonable factfinder to conclude that Plaintiff was retaliated against. [8]

### C.    Time Barred Complaints under ACRA

Defendants argue Plaintiff's state law claims should be dismissed as barred by the statute of limitations. (Doc. 30 at 7).[9] Plaintiff counters by arguing that his filing of a complaint with the EEOC tolled the statute of limitations. [10] (Doc. 31 at 13).

The Arizona Civil Rights Act ("ACRA") prohibits discrimination based on race, color, religion, sex, disability, national origin, age, or the results of genetic testing. A.R.S. § 41-1461 *et seq*. The ACRA's prohibitions against discrimination are consistent with federal requirements under Title VII of the Civil Rights Act of 1964. *Id.*; *see Hawkins v. State*, 900 P.2d 1236, 1240 (Ariz. Ct. App. 1995) (citing *Timmons v. City of Tucson*, 830

---

[8] Had Plaintiff met his prima facie case for retaliation, the Court would have moved on to the rest of the burden shifting framework. The Court would have analyzed Defendants' legitimate business reason for not promoting Plaintiff and if successful, the Court would have moved on to Plaintiff's evidence showing that the legitimate business reason was pretextual. The Court would have come to the same conclusion as it did in Section III(A)(2) and Section III(A)(3).

[9] Federal Rule of Civil Procedure 8(c)(1) requires affirmative defenses, including the statute of limitations, to be raised in the answer. *See* Fed. R. Civ. P. 8(c)(1). Defendants have complied with this rule.

[10] Plaintiff did a dual filing, with both the EEOC and the Arizona Civil Rights Division. (Doc. 30 at 151, Exhibit 5, EEOC form).

1   P.2d 871, 875 (Ariz. Ct. App. 1991)) (finding that federal law is instructive for interpreting

2   and applying the ACRA))). To pursue a claim under the ACRA, a plaintiff must first file

3   his or her charge of discrimination with the Arizona Civil Rights Division ("ACRD") of

4   the Arizona Attorney General's Office within 180 days of the discriminatory act. A.R.S.

5   § 41-1471. To timely file suit, a plaintiff must file his or her ACRA claim within 90 days

6   of: (1) receiving the Arizona Civil Right Division's "Notice of Right to Sue" letter; or (2)

7   within one year from the date the plaintiff filed his or her charge of discrimination with the

8   ACRD, whichever is earlier. A.R.S. § 41-1481.

9        Here, the allegedly discriminatory act (failure to promote) occurred on May 5, 2021.

10   (Doc. 30 at 151; Exhibit 5). Plaintiff filed his ACRA complaint on January 12, 2022[11] and

11   received his Right to Sue letter on March 17, 2023. He brought this lawsuit on June 14,

12   2023. (*Id.*)*;* (Doc. 6). To conform with the ACRA, Plaintiff should have brought his state

13   law claims against Defendant on January 12, 2023, as that is the earlier date. *See* A.R.S. §

14   41-1481 (providing that for ACRA claims, "[i]n no event shall any action be brought

15   pursuant to this article more than one year after the charge to which the action relates has

16   been filed"). Instead, Plaintiff filed this lawsuit, on June 14, 2023. (Doc. 6). He has not

17   complied with the statute of limitations set forth in ACRA. Moreover, Plaintiff's tolling

18   argument is not convincing because the filing of an EEOC charge does not toll the statute

19   of limitations as prescribed under ACRA. *See Grubbs v. Arizona*, No. CV-20-02369-PHX-

20   DJH, 2021 WL 4552419, at *6 (D. Ariz. Oct. 5, 2021) (stating that nothing in Title VII

21   warrants tolling the statute of limitations for actions brought under state law, including the

22   filing of an EEOC claim)[12]; see *also Cohen v. Arizona State Univ.*, No. CV-21-01178-

---

23   [11] Defendants note a date of January 22, 2022, in their Response. (Doc. 32 at 10). The
24   Court assumes this is a typo.

25   [12] Had Plaintiff been able to get past the statute of limitation set forth in ACRA, his bringing
26   of this lawsuit would still have been foreclosed by A.R.S. 12-821.01 as nothing in the
     record indicates that Plaintiff served the District with his notice of claim. That statute
     requires: A. Persons who have claims against a public entity, public school or a public
27   employee shall file claims with the person or persons authorized to accept service for the
     public entity, public school or public employee as set forth in the Arizona rules of civil
28   procedure within one hundred eighty days after the cause of action accrues. The claim shall

PHX-GMS, 2022 WL 1747776, at *4 (D. Ariz. May 31, 2022) (finding that equitable tolling does not apply to ACRA). Therefore, the Court finds that Plaintiff's state law claims for race discrimination and retaliation should be dismissed.

### D.    Hostile work environment

Plaintiff also raises a racially hostile work environment claim for the first time in his Response. (Doc. 31 at 11–12). This was not included in the EEOC charge and Defendant argues it should be dismissed. (Doc. 32 at 8).

Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are " 'like or reasonably related to the allegations contained in the EEOC charge.' " *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir.1984) (quoting *Oubichon v. Northern Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973)), *cert. denied*, 469 U.S. 1108 (1985); *accord Stache v. International Union of Bricklayers and Allied Craftsmen*, 852 F.2d 1231, 1234 (9th Cir. 1988). The EEOC charges are construed liberally, as they are usually made without the assistance of lawyers. *Love v. Pullman Co.,* 404 U.S. 522 (1972). In determining whether an allegation under Title VII is like or reasonably related to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges. *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989). To refine and guide the analysis, courts can look at factors like "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003), as amended (Jan. 2, 2004).

---

contain facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon. A.R.S. 12-821.01.

In Plaintiff's EEOC charge, he checked the boxes for race discrimination and retaliation. (Doc. 30 at 151). Specifically, Plaintiff stated, "I applied to multiple positions during my tenure but was not selected." (*Id.*) As an example, he pointed to Arthur Segoviano's selection as Chief Electrician. (*Id.*) In that same EEOC complaint, he also protested about being sent to do jobs that required more than one person. (*Id.*) He mentioned having filed complaints against his former supervisor Curt Schultz and his current supervisor, Arthur Segoviano. (*Id.*) However, nowhere in the entirety of the charge, did he suggest anything that resembled a hostile work environment or that would lead the EEOC to find one existed. *See Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999) ("An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."). Even if construed liberally, nothing from the EEOC charge supports the finding that an EEOC investigation would spill into a hostile work environment investigation. Finding that no reasonable juror could conclude Plaintiff was subjected to a hostile work environment, the Court will grant summary judgment in favor of Defendants as to this claim as well.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment, (Doc. 30) is **granted** in favor of Defendants Phoenix Union High School District, Lela Alston, Jennifer Hernandez, Aaron Marquez, Ceyshe Napa, Signa Oliver, Stephanie Parra, and Naketa Ross on all of Plaintiffs' claims. There being no remaining claims for trial, the Clerk of Court is kindly directed to enter judgment in Defendants' favor and dismiss this action.

Dated this 31st day of March, 2025.

Honorable Diane J. Humetewa
United States District Judge